# FOR PUBLICATION

**FILED & ENTERED**

**NOV 05 2021**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** bolte    **DEPUTY CLERK**

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

In re:

Summit Financial, Inc.

Debtor(s).

Case No.: 8:21-bk-12276-SC

CHAPTER 11

**ORDER VACATING OSC AND SUGGESTION OF CURTAILMENT OF PLAGIARISM IN COURT PLEADINGS**

Date:        November 3, 2021
Time:       1:30 PM
Courtroom: 5C - Virtual

On November 3, 2021, the Court conducted a hearing on its Order Directing Debtor to Appear and Show Cause Why Debtor Should Not Be Removed as Debtor in Possession (the "DIP"), Or Alternatively, Why the Case Should Not Be Converted Or Dismissed entered October 22, 2021 [Dk. 47] (the "OSC"). Appearances are as noted in the record.

As observed in the OSC, the Court was quite concerned with the Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Schedules and Statement of Financial Affairs filed by the DIP on October 4, 2021 [Dk. 34] (the "Disclaimer"). Specifically, the Disclaimer provides that "[t]he Debtor and its agents, attorneys, and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third

party should the information be updated, modified, revised, or re categorized." [Dk. 34, pg. 2:22-25]. Put generically, the Disclaimer notified the Court and all parties in interest that the DIP's position was (1) it had no duty to insure that the Debtor's Schedules or Statement of Financial Affairs were accurate; (2) it had no duty to update or correct its Schedules or Statement of Financial Affairs; and (3) even if the Debtor was to make changes to its Schedules or Statement of Financial Affairs, it had no duty to tell any creditor that changes were made, whether affected by the change or not.

On October 26, 2021, in response to the OSC, the DIP filed an Amended Global Notes and Statement of Limitations, Methodology, and Disclaimers Regarding Schedules and Statement of Financial Affairs [Dk. 52], as well as declarations from the DIP's then-proposed counsel ("Counsel") and the DIP's general manager [Dks. 53 and 54 respectively]. During the hearing and within his declaration, Counsel attested that the amendment was provided to remove the offending language and indicated that the offending language, which Counsel viewed "as somewhat boilerplate," was generally incorporated into the DIP's own pleadings from the examples of pleadings filed in various mega-cases[1] filed by other law firms in the jurisdictions of the Second Circuit (*In re Sears Holdings Corporation*, et al, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. 2018), Dkt. No. 1609, at page 3), the Third Circuit (*In re Brookstone Holdings Corp., et al*., Case No. 18-11780 (BLS) (Bankr. D. Del. 2018), Dkt. No. 361, at page 2; *In re Boy Scouts of America and Delaware BSA, LLC*., Case No. 20-10343 (LSS) (Bankr. D. Del. 2020), Dkt. No. 375, at page 2), and Fourth Circuit (*In re Chinos Holdings, et al*, Case No. 20-32181 (KLP) (Bankr. E.D. Va. 2020), Dkt. No. 7, at page 2).

Ironically, Counsel did not mention that he had also filed the same Disclaimer within the Ninth Circuit, or the level of billing by his firm for the disclaimers in those

---

[1] It should be noted that this is a Subchapter V Chapter 11 case consisting of seven (7) nail salons in the Orange County, California area with the primary financial issues consisting of accumulated prepetition rent on the leases of the salons. Notwithstanding over 10 pages of "global notes" on the schedules and statement of financial affairs, this is not General Motors. Subchapter V was meant to reduce the costs of Chapter 11 to small businesses, not bilk the small businesses and their creditors with mega case billing opportunities.

cases. (*In re G-STAR Inc.*, Case No. 2-20-bk-16040-WB (Bank. C.D. Cal. 2020), Dkt. No. 59; *In re Coldwater Development, LLC.*, Case No. 2-21-bk-10335-BB (Bank. C.D. Cal. 2021), Dkt. No. 22).

      From the declaration, the Court infers that Counsel's position is that since the Disclaimer was filed in various large cases (and now we know in cases in the Central District of California), the Disclaimer was valid and acceptable, even though the language of the Disclaimer itself contradicts universal understandings that bankruptcy schedules and statements of financial affairs require continuous monitoring and updating when necessary, and that the Federal Rules of Bankruptcy Procedure require notice of all amendments to affected parties in interest.

      A debtor in possession is a fiduciary to its creditors. In *Hamilton v. State Farm Fire & Cas. Co.*, the Ninth Circuit succinctly described a debtor's obligations:

> The debtor, once he institutes the bankruptcy process, disrupts the flow of commerce and obtains a stay and the benefits derived by listing all his assets. The Bankruptcy Code and Rules 'impose upon the bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims.' *In re Coastal Plains*, 179 F.3d at 207–208; *Hay*, 978 F.2d at 557; 11 U.S.C. § 521(1). The debtor's duty to disclose potential claims as assets does not end when the debtor files schedules, but instead continues for the duration of the bankruptcy proceeding. *In re Coastal Plains*, 179 F.3d at 208; *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F.Supp. at 867; Fed. R. Bankr.P. 1009(a) (schedules may be amended as a matter of course before the case is closed)…We agree with the Fifth Circuit's analysis in *In re Coastal Plains* when it said, '[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely.' *Id*.

*Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 785 (9th Cir. 2001).

      Accordingly, contrary to the Disclaimer, the DIP is required to update, modify, revise, or re-categorize the information provided therein, and to notify any applicable third party. Moreover, the failure to notify an affected party of an amendment, "…clearly violates the applicable bankruptcy rule, which provides that "the debtor shall give notice of [any] amendment [to the schedule of assets] to the trustee and to any entity affected thereby." Bankr. R. 1009." *In re Woodson*, 839 F.2d 610, 615 (9th Cir. 1988).

This Court is not naive; bankruptcy practice for attorneys can be difficult at times, as can certain clients with respect to their veracity or transparency. Limiting liability is typically at the forefront of legal practitioners' minds. Also, this Court appreciates that simply filing non-sequitur statements of disclaimer or unilateral liability limiting declarations do not make them enforceable. So, what's the big deal, some would say?

At the hearing, Counsel acknowledged that most of the Disclaimer was simply copied and pasted, with certain amendments, from pleadings filed in other cases. Since Counsel cited pleadings filed in several cases, this Court took the opportunity to examine the disclaimers filed therein. Indeed, a significant amount of boiler-plate language from the cases cited by Counsel was adopted, and some might even say plagiarized.

Which brings us to the next point. Is copying and pasting significant text from another law firm's pleading into your own plagiarism[2], and even if not, is it ethical?

Federal and state courts have sanctioned counsels for plagiarism. *Lindsay Lohan v. Perez*, et al., 924 F.Supp.2d 447 (E.D.N.Y. 2013).

> With respect to defendants' allegations that the majority of the Opposition was plagiarized, plaintiff and her counsel do not deny these assertions. Indeed, defendants' submissions to the Court evidence that almost the entire text of the Opposition is taken from unidentified, unattributed sources. (See Jimenez Decl., Ex. A.) Obviously, this type of conduct is unacceptable and, in the Court's view, is sanctionable pursuant to its inherent powers.

*Id.* at 459 (2013). *See also Kim v. Westmoore Partners, Inc.,* 201 Cal. App. 4th 267, 273 (2011) ("The conduct of [] counsel herein, which included seeking an extension of time to file his brief under false pretenses, and then filing a brief which was not just boilerplate, but a virtual copy of a brief for another case—including a boilerplate accusation of misconduct against appellants' counsel and a boilerplate request for sanctions based on a purportedly 'frivolous' appeal—will not be countenanced… Donahue's conduct on appeal was inappropriate in nearly every respect, and we hereby

---

[2] "Plagiarism" is also the seventeenth (17th) album (1997) by the great rock duo Ron Mael and Russell Mael, aka Sparks.

sanction him in the amount of $10,000").

Academics have opined on this subject. Professor Peter A. Joy, Henry Hitchcock Professor of Law and Co-Director of the Criminal Justice Clinic of Washington University School of Law in St. Louis Missouri, and Professor Kevin C. McMunigal, Judge Ben C. Green Professor at Case Western Reserve School of Law in Cleveland, Ohio, stated in their article *"The Problem of Plagiarism as an Ethics Offense"* the following:

> Plagiarism as a potential pitfall does not burn brightly on the ethical radar screens of litigating lawyers. They are likely to view plagiarism as a species of offense peculiar to academia and the publishing world, not litigation filings. A recent disciplinary case from Iowa, though, demonstrates that judges and ethics authorities do discipline lawyers for what they label as plagiarism in connection with court filings. In this column, we question the practices of labeling attorney copying, even without acknowledgment, as plagiarism, and treating it as a per se ethics violation. We argue, instead, that analysis of copying in the context of litigation should focus directly on the quality of the filing at issue and the competence and diligence of the lawyer who prepared it.

Peter A. Joy. and Kevin C. McMunigal, *The Problems of Plagiarism as an Ethics Offense* (2011), Washington University in St. Louis Legal Studies Research Paper No. 12-05-13, *available at* https://ssrn.com/abstract=2067694.

Professors Joy and McMunigal argue that all, or almost all, lawyers and judges copy and/or paste the work of others – the work of associates, the work of law clerks – without repercussion or recrimination. *Id*. None dare call that plagiarism. They argue, as Counsel argued here, that since form books exist, as do form files, PACER/ECF, and Westlaw©[3] and Lexis©, there is no plagiarism. *Id*. Professors Joy and McMunigal tell us that "[a]ll lawyers know how it works." *Id*. at 57. "Also, judge's work, in other words, is frequently that of a compiler and editor of an opinion rather than its sole author… Also, judges make no implicit claim of originality." *Id*.[4]

---

[3] At the hearing, Counsel referred to the existence of a Global Notes "form" located on Westlaw. *Global Notes for Schedules and Statements of Financial Affairs*, Practical Law Standard Document w-001-4367. However, as noted by the Court and conceded by Counsel at the hearing, the Disclaimer at issue herein is nearly identical to the cases cited in Counsel's declaration, and not the purported "form" language contained on Westlaw.

[4] In case anyone wonders, please be assured that this Judge wrote this order's text himself.

Their solution for any ethical quandary of this nature is: copy smart. Only copy without attribution from competent legal writing, they instruct. The Professors justify copied text with the belief that it probably is written more competently than the copying attorney could do it.[5] *Id*. at 58. But they add, for goodness's sake, when you copy be sure that you fulfill "one of a lawyer's most basic duties, competence." *Id*. If you're going to copy, they insist, make sure that your own facts match up with the facts present from the original source. *Id*. And make sure that the law is correct and hasn't changed since the original text was written. *Id*. at 58 – 59. That might be considered Joy/McMunigal rule # 2 – don't embarrass yourself or your client. Portrayed as an ethical consideration, they note that copying without attribution "may be (ethically) inappropriate to the extent *that it reflects on the lawyer failing to do the work for which he or she was hired*, which would include at least ensuring that the copied material was relevant, accurate, and up to date." *Id*. at 59 (*emphasis added*).

Notwithstanding the foregoing, after consideration of the pleadings filed in response to the OSC and the argument of Counsel at the hearing, but with very limited cause, the Court hereby VACATES the OSC. However, this matter will be revisited at the time of professional compensation review.

**IT IS SO ORDERED.**

Date: November 5, 2021

Scott C. Clarkson
United States Bankruptcy Judge

---

[5] With this, the Court sincerely agrees. Anyone who believes that it's a good idea to copy and paste from another firm's brief in another case without attribution, or to rely on boilerplate language without careful vetting, is probably unable to prepare and present as good an argument as the original drafter.